**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JEFFREY SADDLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **CIVIL NO. 04-4140-JLF** |
| **CONTINENTAL TIRE NORTH AMERICA,** ) | |
| **INC. d/b/a/ GENERAL TIRE, INC., and** ) | |
| **MANPOWER, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM AND ORDER**

**FOREMAN, District Judge:**

Before the Court are motions for summary judgment filed by defendants Continental

Tire North America, Inc., and Manpower, Inc., (Docs. 43,45).  Plaintiff has filed a response,

(Doc. 50), and defendants have filed replies (Docs. 51,52).  These motions are discussed

below.

I.    **Background.**

On or about August 1, 2002, plaintiff applied for work as a temporary laborer at

General Tire through Manpower, Inc., in Mt. Vernon, Illinois.  (Doc. 45, Exh. A, Sadler Dep.,

pp.19:20-20:25).  At the time he applied, plaintiff informed Manpower that his goal was to

work at General Tire.  (Doc. 50, Exh. F, Curd Dep., pp.19:17-25 & 20:1-5).

As part of the Manpower application process, plaintiff signed an Employment

Agreement which states:

> I understand that the term of my employment with [Manpower]
> shall be limited to the duration of any temporary assignment
> which I accept.  I recognize that [Manpower] is not an
> employment agency.  I certify that I am applying for temporary
> work with [Manpower], and I understand that [Manpower's]

customers do not seek permanent help from Manpower.

(Doc. 44, Exh. F, p.4; Doc. 45, Exh. A, Sadler Dep., pp.21:17-23:13).  In other words, the term of plaintiff's employment with Manpower was limited to the duration of any temporary assignments that he accepted.  (Doc. 45, Exh. A, Sadler Dep., p.22:17-21).

On or about August 7, 2002, plaintiff accepted a temporary assignment at General Tire as a laborer.  (Doc. 45, Exh. A, Sadler Dep., pp.29:15-23;  Exh. B, Curd Dep., p.20:13-18). Specifically, General Tire needed temporary employees to help fill a mold cleaning job for a specific client, Mercedes Benz. (Doc. 45, Exh. C, Gass Dep., pp.32:10-22, 56:4-13, 58:2-4).

On March 8, 2003, plaintiff slipped and fell while changing a bag in the press and injured his right wrist.  He sought treatment from an on-site nurse but did not report the injury to Manpower because he thought it was "just a sprain, and after a couple of days it went away." (Doc. 45, Exh. A, Sadler Dep., pp.46:3-47:17).  Then on March 22, 2003, plaintiff was building bags, lost control of his right hand, and injured his right hand and wrist.  He immediately informed Supervisor Paul Chobanian, and on the following Monday, March 24, 2003, he reported it to Manpower Branch Manager Melody Curd.  (Doc. 45, Exh. A, Sadler Dep., pp.49:17-58:23-25).  Ms. Curd promptly filed a workers' compensation for plaintiff and he began receiving benefits.  (Doc. 45, Exh. A, Sadler Dep., p.56:4-21).

On March 24, 2003, plaintiff could work with his left arm only.  (Doc. 45, Exh. A, Sadler Dep., pp.58:16-59:7).  Thereafter, from March 25, 2003, to April 3, 2003, plaintiff worked light duty in Manpower's Mt. Vernon office.  (Doc. 45, Exh. A, Sadler Dep., pp.60:21-61:93).  At this time, Don Gass, General Tire's Personnel Manager, called

- 2 -

Manpower to obtain another employee to fill the temporary position that plaintiff had been occupying.  General Tire obtained another employee and plaintiff's temporary position was filled.  (Doc. 45, Exh. C., Gass Dep., pp.58:14-24, 59:20-25; Exh. A, Sadler Dep., p.71:1-4; Exh. B, Curd Dep. p.63:1-6).

After April 3, 2003, plaintiff stopped doing light duty work because his doctor did not want him driving a vehicle with a manual transmission. (Doc. 45, Exh. A, Sadler Dep., p.61:8-12).  As such, plaintiff did not have transportation to Manpower's office.  (Doc. 45, Exh. A, Sadler Dep., p.61:13-18).  Plaintiff was then placed on temporary total disability.  (Doc. 45, Exh. A, Sadler Dep., p.61:19-21).

On June 4, 2003, plaintiff's doctor released him to drive a stick shift vehicle so he returned to light duty in Manpower's offices.  (Doc. 45, Exh. A, Sadler Dep., pp.61:22-63:9).  On June 25, 2003, plaintiff was released for full duty.  (Doc. 45, Exh. A, Sadler Dep., p.66:8-10).  At this point, plaintiff had been unavailable for regular assignments through Manpower for three months.  Approximately two weeks before he was released for full duty, plaintiff contacted Don Gass, to discuss his return to work.  (Doc. 45, Exh. A, Sadler Dep., pp.70:11-71:4).  Mr. Gass informed plaintiff that he had been released to Manpower for general assignment and that his services were no longer needed.  (Doc. 45, Exh. A, Sadler Dep., pp.70:11-71:4).  Manpower then informed plaintiff that he was still eligible for employment through Manpower, and he would need to call Manpower to obtain assignments.  (Doc. 45, Exh. A, Sadler Dep., pp.83:5-15, Exh. B., Curd Dep., pp. 33:3-4, 62:22-25).  Shortly thereafter, plaintiff called Melody Curd to find out why he could not return to General Tire,

and Ms. Curd refused to give him a reason.  (Doc. 50, Exh. E, Sadler Dep., p.82:17-23).

After June 25, 2003, plaintiff states that he called Manpower a couple of times for assignments.  (Doc. 45, Exh. A, Sadler Dep., pp.90:13-91:8).  On several occasions beginning August 2004, Manpower called plaintiff for assignments, but as of September 8, 2003, plaintiff had found a job at F.B. McAfoos.  (Doc. 45, Exh. B., Curd Dep., pp.43:24-45:16; p.39:22-23).  No one ever told plaintiff that his employment with Manpower had been terminated, and as of this date, plaintiff remains eligible for job assignments through Manpower.  (Doc. 45, Exh. A, Sadler Dep., p.98:4-9).

Plaintiff admits that Manpower informed him that Manpower does not hold temporary positions open for employees who get hurt, and that General Tire had to fill plaintiff's temporary assignment during his medical leave.  (Doc. 45, Exh. A, Sadler Dep., pp.66:3-7, 88:22-89:9).  Plaintiff further admits that no one at Manpower or General Tire ever made a negative comment about filing a workers' compensation claim or getting hurt on the job.  (Doc. 45, Exh. A, Sadler Dep., p.62:20-64:6).

General Tire had never permanently hired plaintiff, nor had it placed him on their payroll.  (Doc. 44, Exh. E, Gass Aff., pp.1-2).  At all times, plaintiff was paid by Manpower as a temporary employee on assignment at General Tire.  (Doc. 44, Exh. E, Gass Aff., pp.1-2).  Plaintiff's medical bills were paid by Manpower and/or its insurance carrier.  (Doc. 45, Exh. A, Sadler Dep., p.62:3-6).

Plaintiff has filed a six-count complaint against Continental Tire North America, Inc. and Manpower for retaliatory discharge (Counts I,IV), retaliatory failure to hire (Counts II,V),

and civil conspiracy (Counts III,VI).  Plaintiff originally filed suit in Jefferson County, Illinois, and Manpower removed it to this Court based upon diversity jurisdiction. Defendants' motions to dismiss are discussed below.

## II.   __Summary Judgment Standard.__

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *FED.R.CIV.P. 56.*  The initial burden of showing that no genuine issue of material fact exists is on the moving party. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1996).  Once the moving party has demonstrated the absence of any genuine factual issues, the nonmoving party, to withstand summary judgment, must present specific facts showing that a genuine issue exists for trial.  *FED.R.CIV.P. 56(e)*.  A genuine issue of material facts exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 249 (1986).

## III.   __Discussion.__

### A.   __Retaliatory Discharge and Retaliatory Failure to Hire Claims.__

To prevail on a retaliatory discharge claim in Illinois, plaintiff must show that: (1) he has been discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy. *See Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (1992).  "More specifically, in a worker's compensation situation, a plaintiff must show that he or she: (1) was the defendant's employee before his or her injury; (2) exercised a right granted by the Worker's Compensation Act; and (3) was discharged from his or her

employment with a causal connection to his or her filing a worker's compensation claim." *Tullis v. Townley Engineering & Mfg. Co., Inc.*, 243 F.3d 1058, 1062 (7th Cir. 2001) (*citing Kritzen v. Flender Corp.*, 589 N.E.2d 909, 915 (1992)). If, however, the employer has a valid basis for discharging the employee, which is not pretextual, the element of causation is not met. *Hartlein*, 601 N.E.2d at 728. In other words, to show retaliatory discharge in Illinois, plaintiff must set forth some facts from which it can be inferred that not only was he discharged, (or threatened with discharge), but also that the employer's "motive in discharging . . . him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1356 (7th Cir. 1985).

Plaintiff may create an inference of retaliatory discharge using either the direct method or the indirect method. *Hiatt v. Rockwell Intern. Corp.*, 26 F.3d 761, 767-768 (7th Cir.1994); *but cf. Carter v. Tennant Co.*, 383 F.3d 673, 678 (7th Cir.2004) (questioning availability of indirect, burden-shifting method in federal court for state law retaliatory discharge claims); *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir.2000) (Posner, J., concurring) (same). *Compare Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 407-08 (Ill.1998) (burden shifting mechanism unavailable in state court). Under the direct method, plaintiff may rely on direct evidence of a defendant's acknowledgment of retaliatory intent, or upon circumstantial evidence sufficient to provide a basis for inferring retaliation. *Rogers v. City of Chicago*, 320 F.3d 748, 753-54 (7th Cir.2003). "Direct evidence essentially requires an admission by the decisionmaker that his actions were based upon the prohibited animus." *Id.* at 753 (*internal*

- 6 -

*quotations omitted*).  Circumstantial evidence, on the other hand, is "evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rogers*, 320 F.3d at 753. Circumstantial evidence can include:  "(1) suspicious timing, ambiguous statements, etc., (2) evidence that similarly situated employees were treated differently, or (3) evidence that the employee was qualified and passed over for the job and the employer's reason for the difference in treatment is a pretext" for retaliation.  *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 762 (7th Cir.2001).

Under the indirect method, plaintiff must first establish a *prima facie* case under the *McDonnell Douglas* framework by showing that:  (1) he engaged in a statutorily protected activity, (2) he performed his job according to his employer's legitimate expectations, (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir.2004); *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir.2004). There is no need to show a causal connection using the indirect method. *Rhodes*, 359 F.3d at 508.  If the plaintiff establishes a *prima facie* case, the burden of production then shifts to defendant to articulate a legitimate, non-discriminatory reason for its action. *Hudson*, 375 F.3d at 559; *Rhodes*, 359 F.3d at 508.  If the defendant is able to provide evidence of such a reason, the burden shifts back to plaintiff to show that the articulated reason is actually a pretext. *Hudson*, 375 F.3d at 559; *Rhodes*, 359 F.3d at 508.  Under either method, if defendant articulates a legitimate, non-retaliatory reason for its action, plaintiff must come forward with

- 7 -

evidence to infer that defendant's reason is a "pretext" for retaliation.

Here, the Court cannot find facts sufficient to create an inference of retaliation. Initially, the Court notes that with regard to Manpower, plaintiff himself admits that he currently remains eligible for assignment and can return to Manpower at any time.  As such, Manpower has not taken an adverse action against plaintiff, and plaintiff's retaliation claims against Manpower must fail.

Plaintiff cannot proceed under the direct method of proving retaliation.  First, plaintiff himself testified that no one, either at Manpower or General Tire, made a negative comment either about the fact that he got hurt on the job or that he filed a workers' compensation claim. Although plaintiff states that Jamie Guyman, Manpower staffing specialist, told him that people who get hurt do not go back to General Tire, this remark was not made by a decision-maker and thus, does not constitute direct evidence of retaliation.  *See Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (*citing Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994); *Schuster v. Lucent Techs.*, Inc., 327 F.3d 569, 576 (7th Cir.2003); and *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 444 (7th Cir.1997)) (stray remarks may be direct or circumstantial evidence of intentional discrimination *if* they are sufficiently connected to the employment decision, i.e., made by the decisionmaker, or those who influence the decisionmaker, and made close in time to the adverse employment decision.) (*emphasis added*).  In addition, plaintiff has offered no circumstantial evidence, such as suspicious timing or ambiguous statements, or evidence that similarly situated employees were treated differently.  To the contrary, both Ms. Curd and Don Gass testified

- 8 -

that on several occasions, temporary Manpower employees have been hurt and have later returned to General Tire. (See Doc. 50, Exh. F, Curd Dep., p.32:9-19; Exh. H, Gass Dep., pp.60:11-61:9).

Nor can plaintiff proceed under the indirect method. As noted, plaintiff has offered no evidence that he was treated less favorably than similarly treated employees who did not engage in a statutorily protected activity. Here, the record simply shows that Manpower arranged for plaintiff to work on a temporary production job at General Tire. Plaintiff got hurt, and could no longer perform the work that was required by the temporary assignment. During the period that plaintiff was unable to work, General Tire was required to continue production on the temporary job, and as such, needed to fill plaintiff's position with another temporary worker. By the time plaintiff was released back to full-duty work, plaintiff's temporary position had long been filled, and General Tire no longer needed his services. The only facts to create an retaliatory inference are that plaintiff got hurt, filed a worker's compensation claim, and three months later General Tire no longer needed his services. The United States Court of Appeals for the Seventh Circuit, however, has specifically held that in the absence of other evidence of a causal link, a time delay between notice of, or filing the claim and termination is insufficient proof of causation. *See e.g., Fyfe v. City of Fort Wayne,* 241 F.3d 597, 603 (7th Cir. 2001) ("In order to establish a causal connection via mere temporal proximity, the employer's adverse action must follow fairly soon after the employee's protected conduct.") (*citing Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir.1992) (four months insufficient); and *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d

317, 321 (7th Cir.1992) (six months insufficient)).  Under these circumstances, plaintiff has insufficient evidence to proceed under either the direct or indirect methods to prove his retaliation claims.

Even if plaintiff did have sufficient evidence to proceed under either the direct or indirect methods, defendants have articulated a legitimate, non-retaliatory reason for plaintiff not returning to work.  As such, the burden shifts to plaintiff to demonstrate that this reason is pretextual.

Plaintiff may demonstrate pretext by showing that defendants' reason:  (1) has no basis in fact; (2) did not actually motivate his termination; or (3) the reason was insufficient to motivate the termination.  *See O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir.1997) (*quoting Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir.1995)).  To demonstrate pretext, plaintiff's burden is to "squarely rebut the articulated reason" for his termination. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997) (*citing Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1319 (7th Cir.1989)).

General Tire's articulated reason for not having plaintiff return in June, 2003, was that the temporary position that plaintiff had been occupying was filled with another temporary employee.  To show pretext, plaintiff must offer evidence to indicate that the employer did not honestly believe the reasons it gave for its action and is simply lying to "cover [its] tracks."  *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012-13 (7th Cir.2000); and *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir.2000).  "A pretext, in employment law, is a 'phony reason' that the employer offers for engaging in discriminatory

- 10 -

conduct." *Mills v. First Fed'l Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 (7th Cir.1996).

Plaintiff attempts to show pretext by noting that Ms. Curd refused to tell him why he could not go back to General Tire.  Plaintiff also makes much of the fact that after he was released to full duty, General Tire continued to hire temporary employees.  Initially, the Court notes that Ms. Curd's refusal to give him a reason for not being reassigned to General Tire does not in and of itself create an inference of retaliation.  In addition, to the contrary, the record clearly shows that plaintiff's temporary position on the specific Mercedes production job to which he was assigned had been filled.  Plaintiff does not assert that General Tire continued to hire temporary employees for that specific production job.  Although the record shows that General Tire did indeed hire more temporary workers after plaintiff was released to full duty, Personnel Manager Don Gass testified that several factors go into hiring temporary workers.  When asked what makes him decide whether to hire someone when there an opening, he testified that:

> A: Several factors, It could be – if you got more than one candidate for the job, you're going to take the best candidate.
>
> Q; Okay.  What factors go into deciding whether or not they're the best candidate?  Experience, work history, attitude, all kinds of stuff like that?
>
> A: That's a big part of it, yes, sir.
>
> Q: All things being equal, you'd rather have an employee that's experienced than an unexperienced [sic] employee?
>
> A: Not necessarily.  Because sometimes we can train a person better

than we can – you're talking an experienced person off the street?

Q: No.  If you had a job opening – an experienced person that had done that particular job.  I mean, let's say you've got somebody working there in your plant and you've got a job opening, would you rather have somebody that had done that job before or somebody that never had?  All other things – if they're both good guys, all other things being equal.

A: That mold cleaning job was not a full-time job.  It was not a permanent job.  So he wouldn't be experienced for any of the other jobs we hired into.

*(See Doc. 50, Exh. H, Gass Dep., pp.57:1-58:4).*

For these reasons, plaintiff's argument fails to show that defendants' reason for not returning him to General Tire is a pretext for retaliation.

In summary, there is simply no evidence from which a reasonable jury could find that either Manpower or General Tire retaliated against plaintiff for filing a workers' compensation claim.  There is no genuine issue of material fact, and defendants are entitled to summary judgment as a matter of law.  Accordingly, defendants' summary judgment motions are granted as to plaintiff's retaliation claims.

> **B.**      **Civil Conspiracy.**

Plaintiff argues that there was a conspiracy.  Specifically, plaintiff argues that  his unemployment required the action of both defendants, thus, it must have been a conspiracy. Having found no inference of retaliatory intent by either defendant, plaintiff's conspiracy claim must fail.  Accordingly, defendants' motions for summary judgment on Counts III, VI is granted.

**IV.**      **Summary.**

- 12 -

The motions for summary judgment filed by Continental Tire North America, Inc., and Manpower, Inc. (Docs. 43,45) are **GRANTED.**  Plaintiff's motion for extension of time to file a response to the summary judgment motions, (Doc. 49), is **MOOT.**  Judgment is entered in favor of defendants and against plaintiffs.  A separate Judgment shall accompany this Order.

**IT IS SO ORDERED.**
**DATED:  June 26, 2006.**

_s/ James L. Foreman_
**DISTRICT JUDGE**